UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELIA REYNOLDS,<br><br>                    Plaintiff,<br><br>     -against-<br><br>ROCKAWAY HD LLC d/b/a FAR ROCKAWAY DIALYSIS,<br><br>                    Defendant. | **COMPLAINT**<br><br><br>**Docket No.:** 21-cv-05408 |

Plaintiff, DELIA REYNOLDS, by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against Defendant, ROCKAWAY HD LLC d/b/a FAR ROCKAWAY DIALYSIS, alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.     This is a civil diversity action seeking monetary damages and other redress against Defendant based upon Defendant's violations of the anti-retaliation provisions of New York Labor Law ("NYLL") § 741, as well as any other claim(s) that can be inferred from the facts set forth herein.

2.     Plaintiff, a Pennsylvania citizen, worked for Defendant - - a New York limited liability company whose members are not citizens of Pennsylvania that operates a Queens-based dialysis services center - - as a Nurse Manager from on or around November 12, 2019 until February 28, 2020.  As described herein, after Plaintiff complained about certain practices that Plaintiff reasonably and in good faith believed constituted improper quality of patient care at

Defendant's medical facility - - namely Defendant permitting its improperly and/or fraudulently credentialed employees who did not meet the legal requirements to be certified dialysis technicians to provide dialysis services to Defendant's patients - - Defendant retaliated by subjecting Plaintiff to an egregious hostile work environment that resulted in the constructive termination of Plaintiff's employment, in violation of NYLL § 741.

<u>**JURISDICTION AND VENUE**</u>

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and this action arises between Plaintiff - - a citizen of Pennsylvania - - on the one hand, and Defendant - - a New York limited liability company whose members are not citizens of Pennsylvania - - on the other hand.

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

<u>**PARTIES**</u>

5.      At the time of filing of this Complaint, Plaintiff is a citizen of Pennsylvania.  At all times relevant to the events detailed in this Complaint, Plaintiff was an "employee" of Defendant within the meaning of NYLL § 741, as she "perform[ed] health care services for and under the control and direction" of Defendant in New York.

6.      At the time of filing of this Complaint, Defendant is a New York limited liability company whose members are not citizens of Pennsylvania.  At all times relevant to the events detailed in this Complaint, Defendant was an "employer" within the meaning of NYLL § 741 as it "provide[d] health care services in a facility licensed pursuant to article twenty-eight or thirty-six of [New York's] public health law."  Defendant's principal place of business is 1 Donald Court,

Elmont, New York 10016, and Defendant has designated an agent for service of process as "The LLC" located at 80 North Franklin Street, Hempstead, New York 11550.

## BACKGROUND FACTS

7.      From at least 2019 until the present, Defendant was and is a New York limited liability company that provides dialysis services to patients at its facility in Elmont, New York.

8.      Plaintiff began working for Defendant on or around November 12, 2019, as a Nurse Manager at Defendant's Elmont facility.  In this role, Plaintiff's duties included administering direct care to patients such as hemodialysis - - a procedure where a dialysis machine and a special filter or a dialyzer are used to clean the patient's blood - - as well as managing the registered nurses, licensed practical nurses, and dialysis technicians who worked there.

9.      On February 7, 2020, while reviewing personnel files as part of her duties, Plaintiff discovered that two dialysis technicians who worked for Defendant, Sharon Mignott and Dionne (last name unknown), were working without the proper certification required by the Code of Federal Regulations ("CFR").  Specifically, in violation of Section 494.140 (e)(4)(i) of Title 42 of the CFR, these dialysis technicians had not obtained state certification from a New York State-approved program or a national commercially available certification program within eighteen months of being hired in that role.

10.      Immediately upon discovering this non-compliance, Plaintiff informed Olusegun Ogunfowora, who was Defendant's Director and her direct supervisor, and Rhoda Blair, Defendant's Office Manager, of her discovery, as well as the danger that the lack of certification posed to Defendant's patients, namely that two technicians who had not been properly trained on the use of Defendant's equipment and had not been educated regarding the latest developments in dialysis patient care were tending to Defendant's patients.  During this conversation, Plaintiff

sought permission to remove these two dialysis technicians from Defendant's work schedule, which Ogunfowora initially granted.  Plaintiff, immediately thereafter, contacted both individuals to inform them that they were being removed from the schedule because they were not certified. Later that day, Plaintiff received a text message from a staff nurse, Latania Robinson, who was Ogunfowora's girlfriend, instructing Plaintiff to disregard the licensing issues with the two dialysis technicians and to put them back on Defendant's schedule.

11.     Plaintiff immediately forwarded Robinson's text messages to Ogunfowora and Blair and wrote that she was unable to schedule either individual without the proper certification as it was not "within state guidelines."

12.     Plaintiff did not receive a response for two days.

13.     However, on February 9, 2020, Ogunfowora and Blair confronted Plaintiff in person and demanded that she put Mignott back on the schedule because, they claimed, Mignott's hiring date of June 2017 as stated in Defendant's records was incorrect, she was actually hired in June 2018, and she therefore still had more time to obtain her certification and still be in compliance with the CFR's eighteen-month requirement.  Neither Ogunfowora nor Blair addressed Dionne's lack of certification during this conversation.

14.     On February 11, 2020, Mignott herself demanded via email that Plaintiff put her back on the schedule.  Plaintiff responded via email that she could not do so because Mignott lacked the necessary certification to administer care to dialysis patients.

15.     On February 16, 2020, Ogunfowora informed Plaintiff that Mignott's date of hire had been "updated" in her employment file and that this supposedly resolved the certification issue because Mignott now had more time to obtain the requisite certification.

16.     The next day, on February 17, 2020, Plaintiff discovered that her office had been broken into and that someone had tampered with Mignott's employment records to change Mignott's hire date from June 2017 to June 2018.  Plaintiff knew that this changed date was incorrect because Plaintiff had seen patient records that Mignott had signed with a 2017 date, along with Mignott's original hiring papers that correctly stated Mignott's date of hire as June 2017.

17.     Plaintiff immediately reported the break-in to Ogunfowora.  Plaintiff noted that the June 2018 hire date was false based on the June 2017 hire date noted in Defendant's records made upon Mignott's hiring.  Nevertheless, Plaintiff reported that even with the suspicious date change, Mignott still would not be able to come into compliance with the CFR because June 2018 was still over eighteen months from that current date.

18.     At no point after Plaintiff's February 7, 2020 discovery of their lack of certification did she schedule either Mignott or Dionne to work for Defendant.  Regardless, Ogunfowora continued to schedule Mignott to care for dialysis patients despite her lack of certification, while disregarding Plaintiff's complaints.

19.     To make matters even worse, during the last two weeks of February 2020, Blair followed Plaintiff around the facility regularly and scrutinized every action that she made, to a degree that she had never done before.  Blair also undermined Plaintiff's decisions and began to micro-manage Plaintiff's daily managerial tasks such as, for example, as to how she staffed and scheduled the technician unit.

20.     Ogunfowora went even further by telling Plaintiff that the entire staff had signed a letter that listed numerous complaints about Plaintiff's management style, but conspicuously, Ogunfowora never provided Plaintiff with a copy of the complaint letter or with any specific details about the complaints purportedly contained therein.

21.     In late-February 2020, Plaintiff explained to Ogunfowora and Blair that she could not work in an environment that required her to place her own license in jeopardy by permitting unlicensed dialysis technicians under her supervision to treat patients without the proper training and related certification.  Plaintiff waited about two more weeks for Defendant to take corrective measures, but when Defendant did not, Plaintiff separated her employment on February 28, 2020, as no reasonable person in Plaintiff's position would be expected to continue working under such hostile and unlawful conditions.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
### *Retaliation Under NYLL § 741*

22.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

23.     NYLL § 741 prohibits employers from discharging or in any other manner discriminating and/or retaliating against an employee because that employee "objects to, or refuses to participate in any activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care."

24.     As described above, Plaintiff was an employee within the meaning of the NYLL, while Defendant was, and still is, an employer within the meaning of the NYLL.  As also described above, after Plaintiff engaged in activity protected under Section 741 of the NYLL, Defendant retaliated against her.

25.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of NYLL § 741, Plaintiff has suffered, and continues to suffer, economic harm, for which she is entitled to an award of damages and other relief.

26.     Plaintiff is also entitled to monetary and/or economic damages including back pay, front pay, and any other damages for lost compensation or employee benefits, interest, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.     A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned New York State law;

B.     An order restraining Defendant from any retaliation against Plaintiff for participation in any form in this litigation;

C.     Granting an award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with her claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that she would have received but for Defendant's unlawful retaliatory conduct;

D.     Awarding Plaintiff her reasonable attorneys' fees, as well as her costs and disbursements in this action;

I.     Pre-judgment and post-judgment interest, as provided by law; and

J.      Granting Plaintiff such other and further relief as this Court finds necessary and proper.

Dated:  Garden City, New York
        September 29, 2021

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
910 Franklin Avenue, Suite 200
Garden City, New York 11530
Tel.    (516) 248-5550
Fax.    (516) 248-6027

By:     _____
        FRANK J. TANTONE, ESQ. (FT 3474)
        ALEXANDER T. COLEMAN, ESQ. (AC 8151)
        MICHAEL J. BORRELLI, ESQ. (MB 8533)